EDUCATIONAL FILMS CORPORATION OF AMERICA *v.* WARD, ATTORNEY GENERAL OF NEW YORK, ET AL.

No. 350. Argued December 1, 1930.—Decided January 12, 1931.

Messrs. *Benjamin P. Dewitt* and *Roger Hinds,* with whom *Mr. Siegfried F. Hartman* was on the brief, for appellant.

382

384

*Mr. Wendell P. Brown,* Assistant Attorney General of New York, with whom *Mr. Hamilton Ward,* Attorney General, was on the brief, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

This is an appeal under § 238 of the Judicial Code from a decree of a District Court of three judges for Southern New York, 41 F. (2d) 395, which dismissed, on the merits, the bill of complaint by which appellant, a New York corporation, sought to restrain appellees, the New York State Tax Commission, from the collection of a tax, on

the ground that the taxing statute, as applied, infringes the federal Constitution.

Section 209 [1] of Article 9-A of the New York Tax Law lays an annual tax on every domestic corporation of certain classes "for the privilege of exercising its franchise in this state in a corporate or organized capacity." The tax is payable in advance for each year beginning November 1st, and is at the rate of $4\frac{1}{2}\%$ of so much of the corporation's entire net income for its preceding fiscal year as is, under other sections, allocated to the business carried

---

[1] § 209. [Laws N. Y. 1929, c. 385.] Franchise tax on corporations based on net income. For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic corporation, and for the privilege of doing business in this state, every foreign corporation, except corporations specified in the next section, shall annually pay in advance for the year beginning November first next succeeding the first day of July in each and every year an annual franchise tax, to be computed by the tax commission upon the basis of its entire net income, as defined in subdivision three of section two hundred and eight of the tax law, for its fiscal or the calendar year next preceding, as hereinafter provided, which entire net income is presumably the same as the entire net income which such corporation is required to report to the United States, plus any income received as dividends on stocks or any interest received on bonds of any character, and without deduction for taxes paid on either profits · or net income to the government of the United States or for any specific deduction allowed by any other authority, except that the entire net income of a corporation not organized under the laws of any state within the United States which shall be taken as the basis of computation by the tax commission shall be the entire net income in fact and determined as hereinbefore provided rather than the amount earned in the United States or the amount returned to the United States Treasury Department, or as otherwise provided by section two hundred and fourteen of the tax law. However, in determining the entire net income, for purposes of equitable taxation under this article of the tax law, the tax commission may include income from any source, provided only that the assets from which the income arose shall be included in any segregation for the purpose of computing the tax.

on within the state. By § 209 the net income embraces "income from any source," and "is presumably the same as the entire net income" reported for income taxation to the United States, "plus . . . dividends on stocks or any interest received on bonds of any character." Subdivision 3 of § 208 provides: "The term 'entire net income' means the total net income, including all dividends received on stocks and all interest received from federal, state, municipal or other bonds . . ." Appellant's bill of complaint sets up that during its fiscal year ending June 30, 1929, it was the owner of copyrights granted by the United States upon motion picture films, and had received royalties from the licensing of them. It challenges the tax assessed against it under the statute, for the year beginning November 1, 1929, so far as it is measured by the amount of the royalties.

Appellant's contention is based on two propositions, both essential to its conclusion that the tax is invalid. They are, first, that the copyrights and all income derived from them are immune from state taxation since they, like patents, are instrumentalities of the federal government, taxation of which the Constitution impliedly forbids, see *Long* v: *Rockwood*, 277 U. S. 142; and, second, that the present tax, measured by net income, is void, so far as the measure includes income from the copyrights, because a tax on federal instrumentalities.[2]

For present purposes it is enough if we direct our attention to the second proposition. At the outset appellant contends that the tax, although stated in the taxing act

---

[2] The equity jurisdiction to enjoin collection of the tax is not challenged. The legal remedy provided by the statute for the recovery of taxes after payment falls short of adequacy in at least two respects. Refund, if any, is expressly without interest. § 219 (d). See *Procter & Gamble Distributing Co.* v. *Sherman*, 2 F. (2d) 165; *Southern California Telephone Co.* v. *Hopkins*, 13 F. (2d) 814, 820, aff'd. 275 U. S. 393. If judicial review of the action of the state

to be on corporate franchises, is in reality a tax on income, and as such falls within the class of taxes which concededly may not be directly imposed on federal instrumentalities. In support of the contention, it points to the language of the statute, (§§ 214 (a) and 214 (8), dealing with the computation of the tax), and to an opinion of the New York Court of Appeals, (*Alpha Portland Cement Co.* v. *Knapp,* 230 N. Y. 48, 57), which refer to the tax as one " upon income."

So far as these considerations are of weight, they are counterbalanced by the later pronouncement of the same court in *People ex rel. Bass, Ratcliff & Gretton* v. *Tax Commission,* 232 N. Y. 42, 46: ". . . although we have said in another connection (*People ex rel. Alpha P. C. Co.* v. *Knapp, supra,* p. 57) that ' the tax imposed upon this franchise must be held in practical operation to be a tax upon the income . . . This tax is equivalent to a tax upon relator's income,' it is primarily a tax levied for, the privilege of doing business in the state."

But the nature of a tax must be determined by its operation rather than by particular descriptive language which may have been applied to it. As was said in *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 625, 626, ". . . neither state courts nor legislatures, by giving the tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect. . . . this Court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be . . . " On

tax commission in assessing the tax results in a determination that such action was illegal, the statute calls for the credit of so much of the tax as was illegally exacted, or refund at the direction of the commission. But it is at least doubtful whether any refund can be compelled. § 219 (d). See *Gorham Mfg. Co.* v. *Travis,* 274 Fed. 975, aff'd. 266 U. S. 265; *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 295, 296.

appeal from the state court in *People ex rel. Bass, Ratcliff & Gretton* v. *Tax Commission, supra,* this Court upheld the tax and defined its nature, saying, 266 U. S. 271, 280: " It is not a direct tax upon the allocated income of the corporation in a given year, but a tax for the privilege of doing business in one year measured by the allocated income accruing from the business in the preceding year. See *New York* v. *Jersawit,* 263 U. S. 493, 496." See also *Home Insurance Co.* v. *New York,* 134 U. S. 594; *People ex rel. United States Aluminum Printing Plate Co.* v. *Knight,* 174 N. Y. 475; *Anderson* v. *Forty-two Broadway Co.,* 239 U. S. 69.

If we look to the operation of the present statute, it is plain that it can have no application independent of the corporation's enjoyment of the privilege of exercising its franchise. If appellant had ceased to do business before November 1, 1929, it would not have been subject to any tax under this statute, although it had received, during its preceding fiscal year, income which the statute makes the measure of the tax. Since it can be levied only when the corporation both seeks or exercises the privilege of doing business in one year and has been in receipt of net income during its preceding fiscal year, the tax, whatever descriptive terms are properly applicable to it, obviously is not exclusively on income apart from the franchise. Hence we pass to the chief objection urged against it, that such a tax, however described, and even though deemed to be a tax on franchises, is invalid so far as it is measured by income derived from a federal instrumentality.

Under the Constitution the privilege of exercising the corporate franchise is the legitimate object, and the immunity of federal instrumentalities from taxation, a legitimate restriction, of the state power to tax. To give both to the power and to the immunity such a practical construction as will not unduly restrict the power of the government imposing the tax, or the exercise of the func-

tions of the government which may be affected by it, is the problem necessarily involved in determining the extent of the immunity.  See *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 523, 524.  So far as it concerns the power of a state to impose a tax on corporate franchises, the problem has long since ceased to be novel.  While this Court, since *McCulloch* v. *Maryland*, 4 Wheat. 316, has consistently held that the instrumentalities of either government, or the income derived from them, may not be made the direct object of taxation by the other, *Weston* v. *City Council of Charleston*, 2 Pet. 449; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503; *Indian Oil Co.* v. *Oklahoma*, 240 U. S. 522; *Federal Land Bank* v. *Crosland*, 261 U. S. 374, it has held with like consistency that the privilege of exercising the corporate franchise is no less an appropriate object of taxation by one government merely because the corporate property or net income, which is made the measure of the tax, may chance to include the obligations of the other, or the income derived from them.  The constitutional power of one government to reach this permissible object of taxation may not be curtailed because of the indirect effect which the tax may have upon the other.

The precise question now presented was definitely answered in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 162, *et seq.*, which upheld a federal tax, levied upon a corporate franchise granted by a state, but measured by the entire corporate income, including, in that case, income from tax exempt municipal bonds.  In reaching this conclusion, the Court reaffirmed the distinction, repeatedly made in earlier decisions, between a tax, invalid because laid directly on governmental instrumentalities or income derived from them, and an excise which is valid because imposed on corporate franchises, even though the corporate property or income which is the measure of the

tax embraces tax exempt securities or their income. See *Society for Savings* v. *Coite*, 6 Wall. 594; *Provident Institution* v. *Massachusetts*, 6 Wall. 611; *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632; *Home Insurance Co.* v. *New York, supra.*

Upon a like principle other forms of excise tax have been upheld, although the statutory measure of the tax included securities constitutionally immune from any form of direct taxation. A state inheritance or legacy tax is valid, although measured by the value of United States bonds which are transmitted. *Plummer* v. *Coler*, 178 U. S. 115. See also *Orr* v. *Gilman*, 183 U. S. 278; *Blodgett* v. *Silberman*, 277 U. S. 1; cf. *Greiner* v. *Lewellyn*, 258 U. S. 384; *Willcuts, Collector,* v. *Bunn, ante,* p. 216. By parity of reasoning an inheritance tax may be levied by a state on a bequest to the United States, *United States* v. *Perkins*, 163 U. S. 625, and by the United States on a bequest to a municipality. *Snyder* v. *Bettman*, 190 U. S. 249. Similarly, state laws, taxing to stockholders, at full value, shares in national banks, are upheld, although the banks own tax exempt United States bonds. *Van Allen* v. *Assessors*, 3 Wall. 573, 583; *People* v. *Commissioners*, 4 Wall. 244, 255; *Peoples National Bank of Kingfisher* v. *Board of Equalization*, 260 U. S. 702; *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103, 112 *et seq.* A tax on net income is not a forbidden tax on exports because it includes receipts from exports in the computation of the income, *Peck & Co.* v. *Lowe*, 247 U. S. 165; *Barclay & Co.* v. *Edwards*, 267 U. S. 442; nor is the inclusion in a state income tax of receipts from interstate commerce a prohibited burden on commerce. *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321; *Shaffer* v. *Carter*, 252 U. S. 37, 57; cf. *Interborough Rapid Transit Co.* v. *Sohmer*, 237 U. S. 276, 283, 284. It has been held that a state tax upon the franchise of a corporation,

measured by its receipts from transportation, properly apportioned to the business done within the state, is valid, although including receipts from interstate commerce. *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; cf. *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217. A state may not tax tangible property located beyond its boundaries, *Union Transit Co.* v. *Kentucky,* 199 U. S. 194; but it may measure a tax on franchises of domestic corporations by corporate property, even though without the state. *Kansas City, F. S. & M. Ry. Co.* v. *Kansas,* 240 U. S. 227; *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325. So well settled is this last mentioned application of the doctrine that an excise may be measured by tax-immune property, that an appeal in which such a tax was assailed on the very grounds urged here, was dismissed per curiam during the present term. *Nebraska ex rel. Beatrice Creamery Co.* v. *Marsh, post,* p. 799.

It is said that there is no logical distinction between a tax laid on a proper object of taxation, measured by a subject matter which is immune, and a tax of like amount imposed directly on the latter; but it may be said with greater force that there is a logical and practical distinction between a tax laid directly upon all of any class of government instrumentalities, which the Constitution impliedly forbids, and a tax such as the present which can in no case have any incidence, unless the taxpayer enjoys a privilege which is a proper object of taxation, and which would not be open to question if its amount were arrived at by any other non-discriminatory method.

This Court, in drawing the line which defines the limits of the powers and immunities of state and national governments, is not intent upon a mechanical application of the rule that government instrumentalities are immune from taxation, regardless of the consequences to the op-

erations of government. The necessity for marking those boundaries grows out of our Constitutional system, under which both the federal and the state governments exercise their authority over one people within the territorial limits of the same state. The purpose is the preservation to each government, within its own sphere, of the freedom to carry on those affairs committed to it by the Constitution, without undue interference by the other. *McCulloch* v. *Maryland, supra,* p. 405; *The Collector* v. *Day,* 11 Wall. 113, 125; *Railroad Co.* v. *Peniston,* 18 Wall. 5, 31; *South Carolina* v. *United States,* 199 U. S. 437, 461; *Flint* v. *Stone Tracy Co., supra,* pp. 154, 172; *Metcalf & Eddy* v. *Mitchell, supra,* pp. 523, 524.

Having in mind the end sought, we cannot say that the rule applied by this Court for some seventy years, that a non-discriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property or income in the measure of it, has failed of its purpose, or has worked so badly as to require a departure from it now; or that the present tax, viewed in the light of actualities, imposes any such real or direct burden on the federal government as to call for the application of a different rule.

The decision of this Court in *Macallen Co.* v. *Massachusetts, supra,* upon which appellant relies, was not such a departure. That case did not overrule *Flint* v. *Stone Tracy Co., supra.* Instead, the opinion rested the decision on the distinguishing fact that the tax exempt securities were included in the measure of the franchise tax by virtue of an amendment to the taxing statute which, it was held, was specifically intended to reach the income from tax exempt national and municipal bonds which had previously not been included in the measure of the tax. The case was thus brought within the purview of *Miller* v. *Milwaukee,* 272 U. S. 713, in which this Court had stated, with respect to a state tax on income, no franchise or

privilege tax being involved [p. 715] : " If the avowed purpose or self-evident operation of a statute is to follow the bonds of the United States and to make up for its inability to reach them directly by indirectly achieving the same result, the statute must fail even if but for its purpose or special operation it would be perfectly good." But, as the Court in that case was careful to point out, in language later quoted with approval in *Macallen Co.* v. *Massachusetts,* p. 631, "A tax very well may be upheld as against any casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them . . ."

It cannot be said that the present tax was aimed at copyrights. Appel ant insists that it is, for the same reason as the tax held invalid in *Macallen Co.* v. *Massachusetts, supra,* in that amendments of the taxing act, sufficiently broad to include income from tax immune property in the measure of the tax, were specifically intended to accomplish that result. Reference is made to the legislative history of the statute. In *People ex rel. Standard Oil Company* v. *Law,* 237 N. Y. 142, it was held as a matter of statutory construction that the " entire net income " specified by the act then in force was gross income as defined by the applicable provisions of the federal income tax law, less specified deductions, and that consequently income from state and municipal bonds and some federal bonds was not included in the measure of the tax. After that decision subdivision 3 of § 208 was amended, Laws N. Y. 1924, c. 329, to include in the definition of income " all interest received from federal, state, municipal or other bonds "; and § 209 was amended, Laws N. Y. 1927, c. 479, so as to include in the measure of the tax " income from any source."

But the statute, before these amendments, was sufficiently broad to include income from copyrights within the measure of the tax; and neither before nor after the

amendments did it make any mention of copyrights or
their income. There is nothing to suggest that the legis-
lature could at any time have had in mind the addition
of income from copyrights to the measure of the tax, or
that the statute or the amendments were adopted "for
the very purpose of subjecting" it *"pro tanto* to the bur-
den of the tax," which was declared to be the vice of the
statute in *Macallen Co.* v. *Massachusetts, supra,* p. 631.
That the royalties play some part in the measure of the
tax is the result of the application of the general language
of the statute to particular circumstances to which the
statute makes no specific reference. In this respect, the
present statute differs in no substantial way from that
upheld in *Flint* v. *Stone Tracy Co., supra.*

*Affirmed.*

MR. JUSTICE SUTHERLAND, dissenting.

MR. JUSTICE VAN DEVANTER, MR. JUSTICE BUTLER and
myself entertain a different view.

The duty of this court to examine taxing acts to see
that the use of federal tax-exempt subjects as a measure
for taxes imposed in terms upon taxable subjects is not a
cloak, under which the former in substance and effect
are taxed, was never more imperative than now, when,
by reason of increased and increasing public expenditures,
states and municipalities are driven to search in every
direction for additional sources of revenue.

The self-evident operation of the provisions of the New
York tax law is to cause the tax here in question to fall
on an instrumentality of the United States. The statute
necessarily exacts tribute from the income derived from
that instrumentality. The amount of this tax is the
same, and its effect, in every respect, is the same as
though it had been imposed upon the income in precise
terms. Were it not for *Flint* v. *Stone Tracy Co.,* it would
be difficult to suggest any reason for ignoring the rule so

often laid down in the earlier cases, that the validity of the tax will depend not on what is named as the subject of the tax, but on its effect. *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 625–627.

It is true that this court in the *Macallen* case did not overrule the *Flint* case, but it did characterize that case as " the extreme example " of the doctrine that a tax may be measured by income, although a part of such income is derived from nontaxable property. But the *Macallen* case definitely determined that such a tax must be held to be invalid if the legislative purpose to lay the tax upon the nontaxable subject be " fairly inferable from a consideration of the history, the surrounding circumstances, or the statute itself considered in all its parts." In the present case, we are of opinion that the legislative purpose, though not as clear as it is in respect of income derived from federal bonds, is " fairly inferable " in respect of copyrights. And, although it may be conceded that a tax measured by income derived from copyrights does not impose a burden upon the exercise of a vital power of the federal government, as it would in the case of federal bonds, it is, nevertheless, a tax falling upon income which is exempt in virtue of an implied prohibition of the federal Constitution. *Long* v. *Rockwood,* 277 U. S. 142.

A former act of the state had been held not to reach certain federal bonds (*People ex rel. Standard Oil Co.* v. *Law,* 237 N. Y. 142, 149), and that act was amended so as to include "all interest received from federal, state, municipal or other bonds." The amendment by definite words thus clearly manifests the legislative purpose to include in the measure of the tax, income derived from federal bonds of every description, and thereby to disregard the exemption of federal instrumentalities from state taxation. So far then as federal bonds are concerned the case falls precisely within the test laid down in the *Macallen* case, and substantially within the facts

of that case. The legislature, however, was not content with this, but later amended the taxing act so as to include in the measure of the tax "income from any source." The history of these amendments, successively broadening the terms of the statute, fairly justifies the inference that the aim of the legislature was to reach income from every source, including that derived from all varieties of nontaxable subjects, and, therefore, necessarily including copyrights and patents. That aim the state cannot make effective consistently with constitutional principles long respected and vital to the preservation of our dual system of government.

What was said by this court in *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, is peculiarly apposite. In that case a statute of Iowa provided that "Shares of stock of state and savings banks and loan and trust companies shall be assessed to such banks and loan and trust companies and not to individual stockholders." The statute was assailed on the ground that the tax, though in form upon shares of stock, was in fact upon the property of the banks, etc., and invalid because the value of United States bonds which they owned was included in the valuation of the property assessed to them. The court, looking through the words of the act to its purpose and effect, sustained the contention of the banks. In deciding the question the court said (p. 509):

" It is conceded and cannot be disputed that these securities are beyond the taxing power of the State, and the only question, therefore, is whether in point of fact the State has taxed them. The first step useful in the solution of this question is to ascertain with precision the nature of the tax in controversy, and upon what property it was levied, and that step must be taken by an examination of the taxing law as interpreted by the Supreme Court of the State. A superficial reading of the law would lead

to the conclusion that the tax authorized by it is a tax upon the shares of stock. The assessment is expressed to be upon ' shares of stock of state and savings banks and loan and trust companies.' But the true interpretation of the law cannot rest upon a single phrase in it. All its parts must be considered in the manner pursued by this court in *New Orleans* v. *Houston,* 119 U. S. 265, 278, and *Home Insurance Co.* v. *New York,* 134 U. S. 594, with the view of determining the end accomplished by the taxation, and its actual and substantial purpose and effect. We must inquire whether the law really imposes a tax upon the shares of stock as the property of their owners, or merely adopts the value of those shares as the measure of valuation of the property of the corporation, and by that standard taxes that property itself."

And at page 521:

" If by the simple device of adopting the value of corporation shares as the measure of the taxation of the property of the corporation that property loses the immunities which the supreme law gives to it, then national securities may easily be taxed, whenever they are owned by a corporation, and the national credit has no defense against a serious wound."

That the principle, " an act may become unlawful when done to accomplish an unlawful end," applies to statutes imposing taxes is well established. *Federal Land Bank* v. *Crosland,* 261 U. S. 374, 378.

But wholly apart from extrinsic circumstances the statute itself in terms seems clearly to impose an income tax. The tax is not one *upon* the privilege of doing business, but it is an annual tax *for* the privilege of doing business, to be computed upon the basis of the net income for the year next preceding. The highest court of the state, in *People ex rel. Alpha P. C. Co.* v. *Knapp,* 230 N. Y. 48, 57, so held in an opinion by Judge Cardozo, from the

reasoning of which it is hard to escape. After citing and discussing pertinent decisions of this court, he concludes:

"Tested by these precedents, the tax imposed upon this franchise must be held in practical operation to be a tax upon the income. Such, indeed, it would be in form as well as in substance, if the legislature had not stated (sec. 209) that the 'privilege of doing business' was the consideration for the payment. Nothing but that recital stands between the statute and conceded invalidity. How the legislature itself looked upon the substance of the burden is indicated by other provisions of the same and later statutes. The tax is to be in lieu of all other taxes on personal property or capital stock (Tax Law, sec. 219–J). It is to be in lieu of all other taxes upon income (sec. 350, subd. 7). There surely was no intention that all mercantile and manufacturing corporations, foreign and domestic, should in very truth be exempt from taxes upon property so fundamental in importance as capital and the fruits of capital. The reason for the apparent exemption was that, under the form of a tax upon the franchise, the property of such corporations had already been subjected to its share of public burdens.

"I think, therefore, that in substance, though not in form, in tendency, though not in name, this tax is equivalent to a tax upon relator's income."

There is nothing in the later case of *People ex rel. Bass, Ratcliff & Gretton* v. *Tax Commission,* 232 N. Y. 42, which, in our opinion, challenges Judge Cardozo's cogent view. That case involved the question whether income which arose in part from property outside the State of New York could be constitutionally included in the basis for computing the tax. The court held it could, being "based on a comparison of the total assets with the assets in New York." The court quoted what Judge Cardozo had said in the preceding case, that "'the tax imposed upon this

franchise must be held in practical operation to be a tax upon the income . . . This tax is equivalent to a tax upon relator's income ' "; and then added, " it is primarily a tax levied for the privilege of doing business in the state." This amounts to nothing more than a repetition in brief of what Judge Cardozo, more at length, already had said, namely, that in practical operation the tax is one *upon* income *for* the privilege of doing business; and it leaves the conclusion set forth in the quotation we have made from the *Knapp* case wholly without modification.

These views, we submit, require a reversal of the judgment below.