283 P.2d 187

**GRANGE MUTUAL LIFE COMPANY, a
corporation, Plaintiff-Respondent,**

v.

**STATE TAX COMMISSION of the State of
Idaho, and E. D. Baird, Joseph H. Nettle-
ton, T. C. Waddoups, and Lloyd A. Fenn,
as members thereof, and P. G. Neill, State
Tax Collector of the State of Idaho, De-
fendants-Appellants.**

No. 8113.

Supreme Court of Idaho.

March 30, 1955.

Laurence N. Smith, Caldwell, and Oscar
W. Worthwine, Boise, for respondent.

Graydon W. Smith, Atty. Gen., and J.
N. Leggat, Asst. Atty. Gen., Boise, for ap-
pellants.

TAYLOR, Chief Justice.

Subsequent to first opinion filed December 22, 1954, rehearing was had March 10, 1955. The first opinion is withdrawn and the following substituted.

This action was brought by respondent, a domestic life insurance corporation, § 41–304, I.C., to avoid the payment of deficiencies claimed by the state tax collector to be owing on its franchise tax for the years 1949, 1950 and 1951. The alleged deficiencies arise out of the failure of the plaintiff to include in its net income interest received by it on bonds issued by the United States government.

"Life insurance companies shall pay a tax for each taxable year *according to and measured by their net income* at the rate and on the basis specified in section 63–3028 of this chapter." § 63–3039, I.C. (Emphasis added.)

The original act, the "Property Relief Act of 1931", provided for an "income tax." Chap. 2, Ex.Sess.1931. Section 12 (a) of that act defined gross income, detailing various sources of income, concluded with "gains or profits and income derived from any source whatever." Subdivision (b) eliminated from gross income items set out in subparagraphs (1) to (7), which "shall be exempt from taxation under this title". By subparagraph (4), interest upon obligations of the United States, of the state and any political subdivision or municipality thereof, was specifically exempted. Paragraph (a) (1) of Section 38 of that act provided:

"Sec. 38. (a) In the case of a life insurance company the term 'net income' means the gross income less:

"(1) The amount of interest received during the taxable year which under paragraph (4) of subdivision (b) of Section 12 is exempt from taxation under this Act; * * *."

It is the contention of the plaintiff that this subparagraph (1) has never been amended or repealed and, therefore, the exemption is still in effect. As we understand it, this is not the situation. Following the 1931 session of the legislature, the laws of the state were compiled in what is known as "Idaho Code Annotated 1932." Section 12 of the 1931 act became § 61–2412, I.C.A., and Section 38 became § 61–2438, I.C.A. The compiler substituted in paragraph (a) (1) of this last section, "Section 61–2412" in place of "Section 12." As we understand, plaintiff's contention is

that this was an error on the part of the compiler; that the original reference to Section 12 of the 1931 act should have been retained; that the act of the compiler in making the substitution was without effect; and that the section should be construed as though this error had not occurred. Granting the contention thus far, we are required to consider the effect of the amendments to both sections made by the next session of the legislature in 1933. The original Section 12, § 61–2412, I.C.A., was amended in two particulars. Subdivision (a), defining gross income, was amended by adding thereto " 'including all interest received from federal, state, municipal or other bonds'," and paragraph (4) of subdivision (b), which originally provided the claimed exemption, was deleted and a new paragraph 4 substituted, as follows:

" 'All such income, if any, from whatever source derived which may not be, by reason of any provision in the constitution of this state or in the constitution or laws of the United States, included in gross income as defined in this chapter; but whenever any such income may not be used for the purpose of measuring the tax payable hereunder, then from such deductions as are allowed under Section 61–2413 of this chapter there shall be deducted the expenses, losses and other deductions properly apportioned or allocated to such income under such rules and regulations as the commissioner may prescribe, and every taxpayer claiming the benefit of any exempt income shall in his return under this chapter, submit a statement showing the amount and source of such income in such form and with such information as the commissioner may require, and such expenses, losses, and other deductions as have been properly apportioned or allocated thereto' ". Chapter 159, S.L. 1933, pp. 246–7.

The original Section 38, § 61–2438, I.C. A., was amended in six of its subparagraphs, and in paragraph (1) of subdivision (a) the compiler's code section number, § 61–2412, I.C.A., was inserted again rather than Section 12 of the original act. Assuming the compiler erred in substituting the code number, it cannot be assumed that such error was unknowingly and unintentionally adopted by the legislature. Both of these sections were amended by the legislature in the same act. Chap. 159, S.L.1933. So, when the members of the legislature were considering § 61–2438, I. C.A., containing the original compiler's error, they had in their hands a bill which set forth, as amended, the section referred to, and from which the original exemption had been stricken. We must presume that the members of the legislature in voting approval of the amended § 61–2438, I.C.A., knowingly and intentionally approved the reference to § 61–2412 in the same act, which substituted a new subparagraph 4 (supra), in effect destroying the exemp-

tion. In other words, if knowingly done by the legislature itself, the insertion of the code section number in place of the original Section 12, would constitute an amendment of the original Section 38, lawfully made by the legislature. True, the substituted code section number as it appears in the session laws of 1933, page 260, is not italicized as are other amendments. However, we know of no constitutional or statutory provision requiring underscoring or italicizing of amendments and, therefore, cannot hold this amendment invalid on that ground. Moreover, the title of the act, Chap. 159, S.L.1933, would seem to indicate the legislature intended to alter exemptions, since it contains the clause "Reducing The Exemptions And Deductions".

It appears from the language used in the new subparagraph 4 (supra) the legislature was somewhat uncertain as to whether or not income from federal, state and local bonds could be included in the income which was to be used as the measure of the tax imposed. But, by the terms it did use, it expressed its intention to include such income, if possible. The reason for that uncertainty will hereinafter appear. However, in 1941, Chap. 12, S.L.1941, the original Section 12, § 61–2412, I.C.A., was amended by eliminating what theretofore had been subparagraph 4 (supra) and renumbering the paragraphs thereof. The result is that what is now subparagraph 4 of § 63–3013, I.C. contains exclusions from gross income wholly foreign to this controversy, and wholly foreign to subject matter of subparagraph 1, subdivision (a) of the original Section 38, so that the reference therein to subparagraph 4, is now wholly meaningless. The ultimate result is that the exemption originally granted to life insurance companies has been repealed by the legislature. Section 12 of the 1931 act is now § 63–3013, I.C., and Section 38 of that act is now § 63–3041, I.C.

Plaintiff also contends that the tax imposed is not a franchise tax and not an excise tax, but a tax upon the income itself, in the nature of a property tax, and that, therefore, federal bonds and the income therefrom, not being taxable, the tax is void to the extent that it is based upon the income from such securities. This contention is contrary to the holding of this court in Diefendorf v. Gallet, 51 Idaho 619, 10 P.2d 307. In that case the court considered the 1931 act before its amendment in 1933. Justice Leeper, quoting from 26 R.C.L. 34, § 18, said:

" 'Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has however come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act,

the enjoyment of a privilege, or the engaging in an occupation.'" Diefendorf v. Gallet, 51 Idaho 619, at 633, 10 P.2d 307, 313.

He also called attention to Section 78 of the act, which has not since been amended and is now § 63–3086, I.C., providing in part:

"For the purpose of raising revenue, the net income required to be shown on returns under this chapter and taken as the basis for determining the tax hereunder shall not be classified or held or construed to be property. * * *"

The opinion concludes that "An income tax, being neither poll nor property tax, necessarily is an excise." The court then quotes with approval from State ex rel. Sallie F. Moon Co. v. Wisconsin Tax Comm., 166 Wis. 287, 163 N.W. 639, 165 N.W. 470:

" 'If the person sought to be taxed is the recipient during the tax year of such specific property as income in its ordinary significance, then the person is taxed. But the tax is upon the right or ability to produce, create, receive, and enjoy, and not upon specific property. Hence the amount of the tax is measured by the amount of the income, irrespective of the amount of specific property or ability necessary to produce or create it.'" Diefendorf v. Gallet, 51 Idaho 619 at page 634, 10 P. 2d 307 at page 313.

See also Hattiesburg Grocery Co. v. Robertson, 126 Miss. 34, 88 So. 4, 25 A.L.R. 748.

If there could be any question about the character of the tax, after the decision in Diefendorf v. Gallet, supra, it was removed by the 1933 revision of the original act. Chap. 159, S.L.1933.

As to individuals, Section 10, 1931 act, was amended to provide "a tax which shall be *according to and measured by* his net income". (Emphasis added.) S.L.1933, p. 245, § 63–3011, I.C. As to corporations, Section 2, which defined "corporation" and included insurance companies, was amended to include "trust companies, state and national banks, common law trusts, * * *." S.L.1933, page 240, § 63–3002, I.C.

Section 25, referring to corporations, was amended to provide:

"A tax shall be levied, assessed, collected, and paid for each taxable year upon:

"a. All corporations as defined in this chapter, except as herein otherwise expressly provided, *for the privilege of carrying on and doing business within this state,* in addition to license taxes levied under any law of this state and taxes levied upon the real and personal property of such corporations;

"b. All national banking associations doing business in this state pur-

suant to the authority conferred by Section 548 of Title 12 of the Code of Laws of the United States, formerly Section 5219 of the United States Revised Statutes as amended, and in conformity with the provisions contained in subdivision c of clause 1 of said section, and the state hereby adopts the method for taxing national banking associations numbered 4 in the first paragraph of said Section 548.

"1. That the tax so imposed, levied and assessed upon corporations and national banking associations shall be in addition to any license tax now or hereafter authorized by law, and taxes authorized to be levied upon the real or personal property of such corporations and national banking associations, but it shall be in lieu of any tax on the shares of stock of such corporations and national banking associations.

"2. The amount of the tax levied under this section shall be *according to and measured by* the net income for each taxable year of such corporations and national banking associations from all sources, including the interest on bonds issued by or under authority of the federal government, and bonds issued by the State of Idaho or any of the municipal or other subdivisions thereof, and such tax shall be computed at the following rates, to-wit:

* * *." S.L.1933, pp. 255–256. (Now § 63–3028, I.C.) (Emphasis added.) Then follows the rate of tax graduated according to income.

Section 36 was amended to provide:.

"Life insurance companies shall pay a tax for each taxable year *according to and measured by* their net income at the rate and on the basis specified in Section 61–2425 of this chapter." S.L.1933, page 259, § 63–3039, I.C. (Emphasis added.)

Section 39 was amended to provide: .

"All insurance companies (other than a life insurance company) shall pay a tax for each taxable year *according to and measured by* their net income at the rate and on the basis specified in Section 61–2425 of this chapter." S.L.1933, pages 261 and 262. § 63–3042, I.C. (Emphasis added.)

■ The self-apparent purpose of these amendments was to make the tax upon corporations a tax upon the franchise for the privilege of doing business in the corporate form, and further to conform to and comply with the requirements of the Act of Congress of March 25, 1926, authorizing the states to tax national banks. That act, among other things, provided:

"The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their

net income, or (4) *according to or measured by* their net income, provided the following conditions are complied with:

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

\* \* \* \* \* \*

"(c) In case of a tax on or *according to or measured by* the net income of an association, the taxing State *may,* except in case of a tax on net income, *include the entire net income received from all sources,* but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits: Provided, however, That a State which imposes a tax on or *according to or measured by* the net income of, or a franchise or excise tax on, financial, mercantile, manufacturing, and business corporations organized under its own laws or laws of other States and also imposes a tax upon the income of individuals, may include in such individual income dividends from national banking associations located within the State on condition that it also includes dividends from domestic corporations and may likewise include dividends from national banking associations located without the State on condition that it also includes dividends from foreign corporations, but at no higher rate than is imposed on dividends from such other corporations." U.S.C.A. Title 12, § 548. (Emphasis added.)

▆▆▆ In order to tax national banks pursuant to the authority given by Congress it not only was necessary for the state to select one of the four methods provided, since more than one was not permitted, it was also necessary for the legislature to so amend the law as to provide that "the rate shall not be higher than the rate assessed upon other financial corporations", and to assure that it should not be "higher than the highest of the rates assessed" upon other business corporations. In permitting the taxation of national banks, The Congress added restrictions intended to prevent discrimination against such national banks by the imposition upon them of a heavier burden of taxation than that applied to other corporations, particularly "financial corporations" in competition with them. Accordingly, our legislature has provided that the franchise tax, upon insurance companies and life insurance companies, as well as all other corporations, shall be the same as that imposed upon national banks. The plaintiff, a life insurance company, is a "financial corporation", which in lending and investments is in competition with national

banks. If the exemption allowed in the original 1931 act were still in effect and the income from federal securities owned by plaintiff were not included in the measure of its franchise tax, it would enjoy a distinct competitive advantage over national and state banks, and other financial corporations. Thus the validity of the entire franchise tax would be put in question.

■ In support of its contention that the tax is not an excise or franchise tax, plaintiff cites John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359, 361. In that case the insurance company successfully avoided a tax claimed by the state to be due upon income received by it in the form of profits realized on the sale of certain real property which it had acquired by foreclosure of mortgages. By Section 37 of the original act, the gross income of life insurance companies was defined as income received from *"interest, dividends, and rents"* (emphasis added), and in that respect the law has not been since amended, § 63–3040, I.C. So the income there in question, being neither interest, dividends, nor rents, was not a part of the income which was the measure of the tax sought to be collected. That was as far as that decision need have gone. It follows that what is there said to the effect that the act provides for an "income tax" as distinguished from an "excise or privilege tax", is dictum. Moreover, it is in conflict with Diefendorf v. Gallet, supra, and is not the law. The opinion in the

John Hancock case apparently proceeds upon the erroneous notion that the state cannot exact more than one excise, and having concluded that the three per cent levy on premiums received by insurance companies, §§ 41–803, 41–804, I.C., is an excise, the "income tax" must be something else. Granting the correctness of the holding that the 3% levy is an excise, 84 C.J.S., Taxation, § 121, we need not determine whether two excise exactions would offend the rule against double taxation because here there is no such result. The legislature said the original premium tax "shall be in lieu of all other taxes upon the personal property of such companies and the shares of stock or assets thereof". 1911 S.L. Ch. 228, at page 740. As amended the purpose of the tax is now stated: "shall be in lieu of all other taxes upon premiums and upon the personal property of such companies and the shares of stock or assets thereof". § 41–806, I.C. It was and is an excise in lieu of *property taxes,* (real property excepted). The excise here involved is a franchise tax measured by net income. There is no duplication. 84 C. J.S., Taxation, § 47, p. 143.

■ There is no discrimination against life insurance companies in the premium tax. It is required of all insurance companies. Moreover, in operation it has been in effect reduced to one per cent through liberalized qualifying requirements. S.L. 1953, Ch. 235.

As to the purpose of the legislature in the 1933 revision, which we have stated to be the exaction of a nondiscriminatory franchise tax in compliance with the Act of Congress, see H.A.S. Loan Service v. McColgan, 21 Cal.2d 518, 133 P.2d 391, 145 A.L.R. 349, and Crown Finance Corporation v. McColgan, 23 Cal.2d 280, 144 P.2d 331. In those cases the Supreme Court of California was construing statutes providing for a franchise tax "according to or measured by" income. And in Southern Pac. Co. v. McColgan, 68 Cal.App.2d 48, 156 P.2d 81, at page 89, the court, referring to the prohibition against states taxing or discriminating against federal instrumentalities, said:

"This prohibition is deemed not to condemn a tax which is neither a property tax on the exempt securities, nor a direct income tax on the income derived from them, but a franchise tax measured by net income."

It has long been settled that the state may exact a franchise tax upon the privilege of doing business in the state in the corporate capacity.

"Nothing can be more certain in legal decision than that the privileges and franchises of a private corporation, all trades and avocations by which the citizens acquire a livelihood, may be taxed by a state for the support of the state government. Authority to that effect resides in the state independent of the Federal government, and is wholly unaffected by the fact that the corporation or individual has or has not made investment in Federal securities." Society for Savings v. Coite, 1868, 6 Wall 594, 18 L.Ed. 897.

In that case, a state tax of a certain percentage of the total deposits on a given day, was upheld as a franchise tax and not a tax upon the deposits or upon property. The court said it was within the discretion of the legislature to determine the manner in which the amount of the tax should be ascertained. Over a half million dollars of the society's deposits were invested in securities issued by the federal government.

In Home Ins. Co. of New York v. State of New York, 134 U.S. 594, 10 S.Ct. 593, 33 L.Ed. 1025, the court upheld a New York statute imposing a franchise tax, based upon the amount of dividends paid upon the company's capital stock. The tax was also graduated according to the amount of the dividend. Referring to the power of the legislature in the premises, the court said:

"It may require, as a condition of the grant of the franchise, and also of its continued exercise, that the corporation pay a specific sum to the state each year or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be ascertained in any convenient mode which it may prescribe. The validity of the tax can in no way be dependent upon the mode which the state may

deem fit to adopt in fixing the amount for any year which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows." 134 U.S. 600, 10 S.Ct. at page 595, 33 L.Ed. at page 1029.

The fact that a portion of the capital of the company was invested in securities of the United States did not invalidate the tax.

Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 involved the validity of a franchise tax imposed by Congress. The court, upholding the tax, said:

"* * * where a tax is lawfully imposed upon the exercise of privileges within the taxing power of the state or nation, the measure of such tax may be the income from the property of the corporation, although a part of such income is derived from property in itself nontaxable." 220 U.S. 163, 31 S.Ct. at page 354, 55 L.Ed. at page 418.

In Northwestern Mut. L. Ins. Co. v. Wisconsin, 275 U.S. 136, 48 S.Ct. 55, 72 L.Ed. 202, a franchise tax imposed by the state measured by the company's *gross* receipts was held invalid insofar as based on interest received from United States bonds. Mr. Justice McReynolds calls attention to the distinction to be made between "net receipts" and "gross returns", citing United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas.1918E, 148. In the last-mentioned case the court held that a tax measured by *net* income as distinguished from *gross* income did not impose an unlawful burden upon interstate commerce.

In the case before us the tax is measured by *net* income.

██ Thus, the question appeared to have been settled that the state could impose a franchise tax measured by net income, including income from United States securities.

Then in 1929 came the decision in Macallen Co. v. Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874, 65 A.L.R. 866. In the opinion, written by Mr. Justice Sutherland, the court held a state franchise tax measured by net income, including the income from federal bonds, invalid to the extent that it included the income from such securities, on the ground that it constituted a tax thereon. The opinion is in part based upon the fact that the original state statute exempted from the measure of the tax, income received from nontaxable securities, and that the amended act in effect repealed the exemption and imposed a burden from which such securities had theretofore been free. This was taken by the court to indicate an intention on the part of the legislature to tax indirectly that which it could not reach directly. In a

vigorous dissenting opinion, by Mr. Justice Stone, with whom Justices Holmes and Brandeis concurred, it was said:

"There is no constitutional principle and no decision of this court, of which I am aware, which would deny to the state the power so to tax the privileges which it has conferred upon petitioner, even though all its property were tax-exempt securities of the United States and income derived from them. For 70 years this court has consistently adhered to the principle that either the federal or state governments may constitutionally impose an excise tax on corporations for the privilege of doing business in corporate form, and measure the tax by the property or net income of the corporation, including the tax-exempt securities of the other or income derived from them." Macallen Co. v. Massachusetts, 279 U.S. 620, 49 S.Ct. 432, at page 437, 73 L.Ed. 874 at page 883.

Educational Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, 173, 75 L.Ed. 400, 71 A.L.R. 1226, was decided in 1931. The opinion was written by Mr. Justice Stone. Mr. Justice Sutherland, joined by Justices Van Devanter and Butler, dissented. The case involved the state franchise tax measured by " 'income from any source'," and included interest from federal, state and municipal bonds, and royalties received by the plaintiff from copyrights. The contention was that the act was invalid, since it imposed a tax upon instrumentalities of the federal government. The court recognized the imposition as a franchise tax, although referred to in the act, and in an opinion by the state court, as one "upon income".

" 'It is not a direct tax upon the allocated income of the corporation in a given year, but a tax for the privilege of doing business in one year measured by the allocated income accruing from the business in the preceding year. * * *' (Citations omitted.) * * * While this court since M'Culloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, has consistently held that the instrumentalities of either government, or the income derived from them, may not be made the direct object of taxation by the other, (citations omitted) it has held with like consistency that the privilege of exercising the corporate franchise is no less an appropriate object of taxation by one government merely because the corporate property or net income, which is made the measure of the tax, may chance to include the obligations of the other, or the income derived from them." Educational Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, at page 171, 75 L.Ed. 400, 71 A.L.R. 1226, at pages 1231 and 1232.

In 1932, Pacific Company v. Johnson, 285 U.S. 480, 52 S.Ct. 424, 427, 76 L.Ed. 893, was decided. The opinion was written by

Mr. Justice Stone. The case involved the validity of a California statute imposing a franchise tax, measured by net income, including " 'interest received from federal, state, municipal or other bonds' ". St.Cal. 1929, p. 19, § 6. It was urged that the tax impaired the obligation of contract. The California act, like our own, defined gross income to include the aforesaid interest, and defined net income as gross income less certain specified deductions. California's constitution and tax laws had been amended to accomplish the imposition of a uniform tax upon corporations and national banks in conformity with the 1926 Act of Congress hereinabove quoted. Like Idaho, the California legislature chose to tax national banks, pursuant to the fourth alternative method authorized by Section 5219 of the 1926 act, 12 U.S.C.A. § 548, and to revise its franchise tax on other corporations to avoid discrimination. Pacific Company v. Johnson, 212 Cal. 148, 298 P. 489. Justice Stone said:

> "The adoption of the taxing act, as recommended by the commission, may therefore be taken, as appellant contends, to evidence a definite and specific legislative purpose to levy a new type of franchise tax, measured by corporate net income, including the tax exempt income from federal and state bonds. * * *

> " * * * As it operates to measure the tax on the corporate franchise by the entire net income of the corpora-

tion, without any discrimination between income which is exempt and that which is not, there is no infringement of any constitutional immunity." Pacific Company v. Johnson, 285 U.S. 480, 52 S.Ct. at page 427, 76 L.Ed. 893, at pages 898 and 900.

The question was again before the Supreme Court in Tradesmens Nat. Bank v. Oklahoma Tax Comm., 1940, 309 U.S. 560, 60 S.Ct. 688, 690, 84 L.Ed. 947. The Oklahoma statute, 68 O.S.1951 § 887, imposed a franchise tax upon national banks "according to, or measured by" net income, including income from federal securities, adopting the fourth method of taxing such banks authorized by the 1926 Act of Congress (supra). The prior Oklahoma act had expressly excluded interest on tax immune federal securities, but by the amendment interest on such securities was expressly included in the measure of the tax. Relying upon the Macallen case, the bank urged that this was an unconstitutional levy upon the non-taxable income itself. Speaking through Mr. Justice Murphy, the court said:

> "The power of a state to levy a tax on a legitimate subject, such as a franchise, measured by net assets or net income including tax-exempt federal instrumentalities or their income is likewise well settled. * * *

> " * * * The history of the Oklahoma legislation on this subject discloses only that it sought to change its policy pursuant to the express authori-

zation conferred by R.S. § 5219. It has effected its purpose by including within the measure of its franchise tax on national banks the entire net income without respect to source and without discrimination against tax-exempt federal securities. * * *

"We do not now decide just what circumstances, if any, would bring a situation within the precise scope of the Macallen Co. case, assuming that case still has vitality." Tradesmens Nat. Bank v. Oklahoma Tax Comm., 309 U. S. 560, 60 S.Ct. at page 691, 84 L.Ed. 947, at pages 950, 951 and 952.

The confusion wrought by the Macallen case has been for the most part eliminated by these subsequent decisions. So now it may be said:

"It is well settled by our highest judicial authority that a state has the power to levy a tax on a legitimate subject, such as a corporate franchise, measured by net assets or net income including tax-exempt federal instrumentalities which, as such, could not be directly taxed." Werner Mach. Co. v. Director of Division of Taxation, 1954, 31 N.J.Super. 444, 107 A.2d 36, at page 39.

See also Nashville Trust Co. v. Evans, 195 Tenn. 205, 258 S.W.2d 761; and 173 A.L. R., Annotation § 81, page 162; 84 C.J.S., Taxation, § 134 e, p. 270.

The deficiency assessments are valid.

The judgment is reversed and cause remanded with directions to dismiss the action.

Costs to appellants.

KEETON, PORTER and SMITH, JJ., and H. McQUADE, District Judge, concur.