Standard Underground Cable Co. *v.* Attorney-General.

THE STANDARD UNDERGROUND CABLE COMPANY, appellant,

*v.*

THE ATTORNEY-GENERAL, respondent.

1. The power of the legislature to impose taxes on persons, property, business and franchises is unlimited, save only by such restrictions upon the exercise of that power as are found in the organic law, or such as are inherent in the nature of the subject.

2. The fourth section of the act (*Rev. Sup. p. 1017*), which imposes a tax upon manufacturing companies of this state not transacting their business in this state, is not violation of article 14, section 7, paragraph 12 of the constitution.

3. As a license or franchise tax it is not within the clause of the constitution above referred to. The enrolled statute of a state is conclusive proof of the enactment as well as the contents of the statute, and such attested copy cannot be contradicted by the legislative journals, or in any other mode.

4. The true meaning of the proviso of the fourth section above referred to, in connection with the rest of that section, as respects the sort of corporations intended to be included in the taxing power, explained.

5. The proceeding by injunction in the court of chancery is merely a means employed for enforcing payment of the tax levied. *Certiorari* is the proper proceeding for testing questions touching the validity of the tax. In the review of such questions, the original jurisdiction of the supreme court is exclusive.

On appeal from orders of injunction advised by Vice-Chancellor Bird, on the application of the attorney-general, under the statute in such cases, for non-payment by the appellant company of taxes for the years 1884, 1885, 1886 and 1887.

*Mr. A. Q. Keasbey & Sons,* for the appellant.

*The Attorney-General, pro se.*

The opinion of the court was delivered by

KNAPP, J.

The proceeding which gives rise to this appeal was had under the seventh section of the act of the legislature, approved April 18th, 1884, entitled "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof." The provision of that section is:

"That in addition to other remedies for the collection of such tax (taxes imposed under that act), it shall be lawful for the attorney-general, either of his own motion or upon request of the state comptroller, whenever any tax due under this act from any company shall have remained in arrears for a period of three months after the same shall have become payable, to apply to the court of chancery by petition, in the name of the state, upon five days' notice to such corporation, * * * for an injunction to restrain such corporation in the exercise of any franchise or the transaction of any business within this state until the payment of such tax and interest due thereon, and the costs of such application, * * * the said court is hereby authorized to grant such injunction on a proper case appearing, and upon the granting and service of such injunction it shall not be lawful for such company thereafter to exercise any franchise or transact any business in this state until such injunction be dissolved."

The decretal order appealed from awarded such injunction against the appellant for failure to pay a tax of one-tenth of one per cent. on its capital stock, imposed by the state board of assessors under the provisions of the fourth section of said act, upon the appellants as a manufacturing corporation not carrying on its business in this state.

The act, as its title imports, had for its object the imposition of a license or franchise tax upon certain of the corporations of this state.

The first section directs the tax against certain corporations doing business in this state. It embraces telegraph, telephone, cable, electric light, certain express companies, every gas, palace, parlor or sleeping car company, every oil or pipe line company, and every fire, marine, life or accident insurance company.

The second section requires statements to be made to state officers by the corporations named in section 1 of certain *data* to serve as bases for assessments.

The fourth section directs the rate of taxation to be levied against the corporations specified in the first section, and then further provides that—

"All other corporations incorporated under the laws of this state, and not hereinbefore provided for, shall pay a yearly license fee or tax of one-tenth of one per centum on the amount of the capital stock of such corporation; *provided*, that this act shall not apply to railway, canal or banking corporations, or to savings banks, cemeteries or religious corporations, or purely charitable or educational associations, or manufacturing companies or mining companies carrying on business in this state."

The appellant is a corporation incorporated under the laws of this state; it is a manufacturing company; it has an office in this state, and procures from other manufacturing corporations in the state much of the material used by it, but the manufacture of its special product, into which these materials enter, is carried on in the State of Pennsylvania.

It must, therefore, under the rulings in this court, be held to be a company not transacting its business in this state, within the meaning of this law. *American Glucose Co.* v. *State, 16 Stew. Eq. 280.*

But it is objected that this law, if it be construed so as to uphold the tax against the appellant, is violative of that provision of the amended constitution of this state found in article 4, section 7, paragraph 12, which provides "that property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." The tax, payment of which is

sought to be enforced by this proceeding, does not fall within that constitutional provision.

The power of the legislature to impose taxes on persons, property, business and franchises is unlimited, save only by such restrictions upon the exercise of that power as are found in the organic law, or such as are inherent in the nature of the subject.

The fault of this position is the assumption that this tax is one upon property. Such, manifestly, is not the case. The law in question imposes a tax on certain corporations by way of a license for exercising corporate franchises. It is declared to be such tax by the act, and, although it is laid on this class of corporations with respect to the capital stock, the tax possesses the legal quality of a license or franchise tax. *Evening Journal Association* v. *State Board of Assessors, 18 Vr. 36; Cooley Tax. (2d ed.) 379* and cases cited.

Upon the power of the legislature to impose such a tax, there exists no restriction in our constitution. As a license or franchise tax, it is not within the equality clause of the constitution referred to.

In those states in the Union having constitutional provision requiring equality in the taxation of property, it is uniformly held that such provisions do not abridge or apply to the legislative power of indirect taxation by taxes on franchises, privileges, trades and occupations. *Cooley Tax. 176 et seq.* and cases cited; *State Board of Assessors* v. *Central R. R. Co., 19 Vr. 146, 356.*

It is next insisted that this law is void because it is a regulation of commerce between the states, and an infringement upon the exclusive power of congress over that subject under the provisions of the federal constitution.

This position seems to be based on two grounds; first, that all corporations holding a franchise from one state and performing their functions in another are engaged in interstate commerce; and second, that the business of this particular corporation, namely, the manufacture of electric cables, is itself internal commerce.

18

These grounds impress me only by their novelty.   Our general laws for the organization of corporations permit companies to transact their business in other states.   It certainly has not been supposed that the exercise of this right put them beyond the reach of taxation everywhere, or brought them into any relations whatever with the provision in the federal constitution referred to.   No case is cited giving the slightest countenance to the notion that to hold a charter from one state, when the corporate property is located, or corporate business transacted, in another state, relieves the corporation in both or either state from taxation in any form which the legislative power may under its state constitution adopt; nor any case in which these conditions are given the slightest consequence in ascertaining the limit of the state power to tax either the property of the corporation where such property has its *situs,* or its franchises in the state which granted them.

Under the point that the appellant is engaged in, or is an instrument in, interstate commerce, cases in the federal courts are liberally cited in the brief of counsel throwing light on the relation which state taxation holds to the exclusive power of congress to regulate commerce between the states, and defining what is internal commerce, such as is removed from state interference and obstruction.   It is scarcely necessary to say that none of those cases gives the slightest countenance to the notion that the manufacture of that which may become a subject of commerce, and which may ultimately pass into protected trade, is commerce itself, or that manufactories of any sort can be instruments in commerce.

Railroads and telegraphs may become instruments of interstate or international commerce, and when, as such instruments, they are in action, they may not be obstructed by state impositions and restrictions; hence it was held in *Western Union Telegraph Co.* v. *Massachusetts, 125 U. S. 530,* that the telegraph company having brought itself within the provisions of the act of congress of July 24th, 1886, entitled "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes,"

that collection of a tax imposed upon the telegraph company on its property in Massachusetts could not be enforced by injunction, although the taxing act provided for that as one mode of enforcing payment; the reason being that an injunction enforced in that state would put a stop to its general operations. The tax, however, was held to be valid, and the state was left to its other remedies for its collection. *Pensacola Telegraph Co. v. Western Union Telegraph Co.*, *96 U. S. 1*; *Telegraph Company v. Texas*, *105 U. S. 460*, are also instances of illegal interference with companies as instruments of commerce. But each of these cases holds the companies to be subject to taxation, otherwise legal, which do not obstruct or place a direct burthen upon them either as instruments of general commerce or as agents of the United States.

The case of *Coe v. Errol*, *116 U. S. 517*, marks the point where the subjects of commerce pass out of the state's power to tax and come within federal protection. That point is not reached when they become finished production. It is there held that goods, the product of a state, intended for exportation to another state, are liable as part of the general mass of property of the state of their origin until actually started in course of transportation to the state of their destination, or are delivered to a common carrier for that purpose; that carrying and depositing them at the depot for the purpose of transportation is no part of such transportation. There are many and important steps between the mere manufacture of insulated telegraph wires or cables and the establishment of an interstate or foreign telegraph line. It may as well be said of the corporation that excavates copper or iron from the earth, as it may of the corporation which converts that copper or iron into wires or insulated cables, that it is engaged in or becomes thereby an instrument in interstate commerce.

The earnestness with which these objections against the law in question was pressed, seemed to require consideration to the extent that has been given them.

I think there can be no doubt that in this proceeding the constitutionality of the law under which the tax was imposed may

be brought in question, and the validity of the law under the constitution be passed upon. For if the act be invalid on constitutional ground, the court should so declare, and refuse to enforce it.

This law, however, is not an unconstitutional exercise of the taxing power.

It will be proper to notice another objection raised against this decree. It touches the construction of the latter clause of the fourth section of this statute, and the admissibility of certain testimony offered to aid in its construction. Effort has been made to show that the qualifying words, "carrying on business in this state," which conclude this section, refer to mining companies only, thus leaving all other companies designated in the proviso, wherever they may transact their business, exempted from the operation of the law. It is contended that such would be the necessary construction of the proviso if the words "manufacturing companies" had been followed by a comma. We are then referred to evidence taken from the files and journals of the two houses showing the course of legislation through which this bill passed. This was designed to show, *inter alia*, that the last clause of the proviso came into the bill by amendment, the draft of which, as accepted by the two houses, contained the desired punctuation. It is also thought that the order in which the amendments were introduced, and the form of words used in the amendments, indicate an intention favorable to the appellant's view. The vice-chancellor decided against the admissibility of this testimony. He permitted it to be taken, but expressly declined to give it any effect in decision, basing his judgment on the authority of *Pangborn* v. *Young*, *3 Vr. 29*. With the judgment excluding the evidence I fully agree. In the case referred to, the question of the admissibility of such testimony to annul, vary or contradict statutes legally authenticated, received from the court the fullest and most careful consideration, and the judgment reached was put upon grounds that would seem to be impregnable. It has the support of the soundest reason and abundant authority. It has stood unquestioned in this state for a quarter of a century, and in *Passaic*

*v. Stevenson, 17 Vr. 173,* received the express approval of this ·court. That case must now be regarded as declaring the settled law of this state. The distinction sought to be drawn between that case and this is illusory. The principle established in the decided case is controlling in this. The general doctrine declared was, that the enrolled statute of a state " is conclusive proof of the enactment as well as the contents of the statute, and that such attested copy cannot be contradicted by the legislative journals, or in any other mode." Now, whether the attempt be by such extrinsic means to add to, take from or entirely abrogate the law, it equally assails that conclusiveness of proof ascribed ·to the duly authenticated statute.

This statute, then, must be interpreted by the aid of those ·rules which the common law affords us. The proviso, I think, ·is clearly an ambiguous sentence. The qualifying words, I ·think, can be applied in only one of two ways : one as embracing all· the corporations named as excepted from the operation ·of that general taxing clause in the law, and the other as applying to the last named only, namely, mining corporations. There is no grammatical rule by which, from the mere wording of the ·clause, it can be determined in which application those words are ·to be used.

The particle *or* frequently occurring in the sentence, is certainly here used in its copulative, and not in its disjunctive, sense.

These qualifying words relate to and qualify some antecedent substantive. Now, I think, the better construction is, that that substantive so qualified is corporations, variously named as ·companies, associations, corporations, and that the terms designating the various sorts of corporations as railroads, canals, ·manufacturing, mining &c., are merely descriptive words, or noun-adjectives. Accepting this as a proper construction, the ·qualifying words relate to all corporations designated in the proviso. This construction better comports with the spirit and ·reason of the law.

The scheme of this particular taxing act seems to be to impose ·taxes on three classes of corporations : certain specified cor-

porations doing business in the state wherever chartered; those not doing business in this state, but holding their charters under state authority, and a class of unspecified corporations, which must be few in number, holding charters under, and performing their functions in, the state.

In the former class, different provisions for taxation as amongst themselves are adopted, and in the second and third classes named, a franchise tax is imposed based upon the amount of their capital stock.

By reference to other taxation laws in the state, it will be observed that provisions exist for the taxation or exemption of all corporations specified in the proviso, and having their property and business in this state. It was quite reasonable, therefore, that the legislature should remit such corporations to the operation of such laws. The general intention seems to be, that all corporations incorporated under laws of this state, and not doing business here, shall pay a tax on their franchise.

If the words " carrying on business " &c. in the proviso apply to mining companies only, then a mining company incorporated but not doing business here would be subject to taxation, while the other corporations named, railway, manufacturing &c., incorporated but not doing business here, would be exempt. It is quite unreasonable to suppose that the legislature intended to single out for taxation so insignificant a class as mining companies from all other corporations chartered here and carrying on their business elsewhere. On the other hand, to give the qualifying words application to all the corporations named in the proviso, they are very properly removed from the operation of this act, for the reason that their taxation is elsewhere provided for.

Under the construction which we give to this law, it will fall symmetrically into our system of corporate taxation.

Under that system, tax is laid on the corporation, business or property when its corporate operations or property are here. When its real business and property are elsewhere, and out of state protection, a tax on the franchises and privileges upheld by the state alone is imposed. Such a system is as near an ap-

proach to that equality which is desirable in all taxation as any other scheme that may be suggested.

We have considered this portion of the act of 1884, not for the reason that it was deemed at all essential to the decision of this case, but for the reason that the court, having heard discussion on the subject, silence might imply that the mind of the court was unsettled as to its meaning. In this proceeding, the discussion of the question has no necessary or appropriate place.

The legislature gives no evidence, in the provisions of the seventh section of the act, of the fruitless design to transfer this purely legal question from the law court to equity. From the plain words of that section, it will be seen that injunction is merely a means employed for enforcing payment of the tax levied, and was not designed to institute a suit in which the validity or regularity of the tax is open to controversy. And, unless the validity of the law under which the tax is imposed is successfully assailed on constitutional grounds, a tax imposed under color of it, and not stayed in its collection by pending proceedings in *certiorari*, presents a case for the exercise of this special jurisdiction by the chancellor, and thereby, in the language of the act, " a proper case appears " for the injunction order.

For decision of the other questions touching the validity of. the tax, resort ·must be had to the supreme court through *certiorari*. In the review of these questions, the jurisdiction of the supreme court is exclusive.

The orders should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, KNAPP, MAGIE, VAN SYCKEL, BROWN, COLE, McGREGOR, SMITH, WHITAKER—11.

*For reversal*—None.