31 N.J. Super. 444 (1954)
107 A.2d 36
WERNER MACHINE COMPANY, INC., PETITIONER-APPELLANT,
v.
DIRECTOR OF DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 21, 1954.
Decided July 12, 1954.
*445 Before Judges JAYNE, STANTON and HALL.
Mr. Leopold Frankel argued the cause for appellant (Messrs. Frankel & Frankel, attorneys).
Mr. Joseph A. Murphy, Assistant Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey; Mr. Benjamin M. Taub, Deputy Attorney-General).
The opinion of the court was delivered by JAYNE, S.J.A.D.
The present appeal occasions our review of the validity of a 1952 franchise tax assessment placed upon the appellant, a corporation of this State, in *446 the administrative pursuance of the terms of the Corporation Business Tax Act (1945). L. 1945, c. 162, p. 563, et seq.; (R.S. 54:10A-1, et seq.). The assessment was affirmed by the Division of Tax Appeals.
Admittedly, the appellant is a subject taxpayer embraced within the orbit of the statute. Indeed, no disagreement regarding the relevant facts is perceptible in the record. The basic factual circumstance is that the appellant in its tax return for the calendar year ending December 31, 1951 disclosed among its corporate assets the ownership of $400,091 of United States government bonds. The respondent included those bonds in the calculation of the net worth of the corporation upon which the amount of the annual tax was determined. R.S. 54:10A-4(d). The appellant paid the tax of $458.41 under protest.
The remonstrance of the appellant is that the act is unconstitutional in that the tax artfully disguised in the costume of a corporation franchise tax is in naked reality a personal property tax designed unlawfully to envelop within the circumference of state taxation the bonds and other obligations of the United States. Vide, 31 U.S.C.A. § 742. Counsel for the appellant also argumentatively contends that the assessment impairs the obligations of contract between the taxpayer and the United States Government and constitutes a denial to the taxpayer of due process of law and of the equal protection of the law.
It is significant initially to observe that the act exacts "an annual franchise tax * * * for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State." R.S. 54:10A-2. Secondly, it is acknowledged in the present proceeding that the government bonds evidence the investment of the appellant from the capital and surplus accounts of the corporation.
And then subdivision (d) of section 4 of the act may be scrutinized:
*447 "(d) `Net worth' shall mean the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion and (5) the amount of all indebtedness owing directly or indirectly to holders of ten per centum (10%) or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes, as of the close of a calendar or fiscal year. However, if in the opinion of the commissioner, the corporation's books do not disclose fair valuations the commissioner may make a reasonable determination of the net worth which, in his opinion, would reflect the fair value of the assets carried on the books of the corporation, in accordance with sound accounting principles, and such determination shall be used as net worth for the purpose of this act."
It is not supposed that the power of a state to impose a tax or excise fee upon a corporation for the privilege of exercising the corporate franchise within its boundaries is any longer questionable. Standard Underground Cable Co. v. Attorney-General, 46 N.J. Eq. 270 (E. & A. 1889). Justice Garrison characterized a franchise tax as "a poll tax levied upon domestic corporations for the right to be." Lumberville Delaware Bridge Co. v. State Board of Assessors, 55 N.J.L. 529, 537 (Sup. Ct. 1893).
And so it is beyond debate that the appellant was exercising a privilege which is an object of lawful taxation. Such is taken to be admitted by counsel of the appellant, but it is argued that despite the title of the act of 1945 and the express declarations therein to the contrary, the tax thereby originated is upon the intangible personal property of the corporation and not for its franchise privileges. The argument has a logical thinness but a nimbleness of advocacy.
The inspiration promoting that point of view seems to have arisen principally from the presence in the act of the following provision:
"* * * And such franchise tax shall be in lieu of all other State, county or local taxation upon or measured by intangible personal property used in business by corporations liable to taxation under this act." R.S. 54:10A-2.
*448 It is said that the embodiment of the foregoing proviso in the act conspicuously exhibits a legislative intent indirectly to levy a tax upon federal instrumentalities. To fortify the point, counsel for the appellant bestows particular emphasis and reliance on the decision rendered in Macallen Company v. Commonwealth of Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874 (1929), which, it is said, illustrates a comparable unconstitutional endeavor.
Assuredly that which cannot be done directly by a state Legislature because of constitutional restrictions cannot be accomplished indirectly by legislation which circuitously or obliquely aims to achieve the same result. However, the mere intent of the Legislature to do that which the Constitution permits cannot deprive legislation of its constitutional validity on account of the motives that may have inspired it.
The decision in the Macallen case has not borne any healthy progeny, and has subsequently attained prominence more by reason of its circumvention than by its adoption. Indeed, in Tradesmen's National Bank of Oklahoma City v. Oklahoma Tax Commission, 309 U.S. 560, 60 S.Ct. 688, 692, 84 L.Ed. 947 (1940), the court remarked: "We do not now decide just what circumstances, if any, would bring a situation within the precise scope of the Macallen Case, assuming that case still has vitality." Economic progress cannot go on without forgetting some potted wisdom of the past. The life of the law, like our own, yields to readaptation.
It is significant to notice that the court in the Macallen opinion cautiously quoted the following passage from its decision in Miller v. City of Milwaukee, 272 U.S. 713, 715, 47 S.Ct. 280, 71 L.Ed. 487 (1927): "A tax very well may be upheld as against any casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them * * *."
The circumstances surrounding the amendatory enactment implicated in the Macallen case are manifestly distinguishable. Justice Holmes had made the comment in Pine Hill Coal Co. v. U.S., 259 U.S. 191, 42 S.Ct. 482, 483, 66 L.Ed. *449 894 (1922): "It is a delicate business to base speculations about the purposes or construction of a statute upon the vicissitudes of its passage."
In the present case the basic and fundamental question sought to be answered is whether the Corporation Business Tax Act (1945) established a franchise tax or a personal property tax.
True, it would be venturesome to determine the nature and essentiality of every tax in conformity with its statutory label. Its practical operation is of superior significance. Educational Films Corp. of America v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1931). But certainly the clear and explicit declarations of the Legislature embodied and implicit in the enactment cannot be arbitrarily ignored. Bass v. Allen Home Improvement Co., 8 N.J. 219 (1951).
The diction, limited applicability, the formulae, and indeed all of the ostensible features of the statute here under observation reveal the practical nature of the tax to be that of a franchise tax, a privilege tax payable by domestic and foreign corporations conducting business within this State. We so resolve. Werner Machine Co., Inc. v. Zink, 6 N.J. Super. 188 (App. Div. 1950).
At this juncture it will be appropriate to explain that in N.J. Realty Title Ins. Co. v. Division of Tax Appeals, 338 U.S. 665, 70 S.Ct. 413, 418, 94 L.Ed. 439 (1950), the statutory section impugned was not regarded "as imposing a tax on privilege or franchise by either the New Jersey Legislature or the taxing officials or by any of the courts below."
No novelty inheres in the debated propriety of including the ownership of federal tax-exempt bonds in the calculation of the net assets or net worth of a corporation subject to a franchise tax.
It is well settled by our highest judicial authority that a state has the power to levy a tax on a legitimate subject, such as a corporate franchise, measured by net assets or net income including tax-exempt federal instrumentalities which, as such, could not be directly taxed. Consult, Flint v. Stone *450 Tracy Co., 220 U.S. 107, 165, 31 S.Ct. 342, 55 L.Ed. 389 (1911); Educational Films Corp. of America v. Ward, supra; Pacific Co. v. Johnson, 285 U.S. 480, 52 S.Ct. 424, 76 L.Ed. 893 (1932); Tradesmen's National Bank of Oklahoma City v. Oklahoma Tax Commission, supra.
The determination of the Division of Tax Appeals under review is affirmed.